The first case this morning is Agenda Number 10, Number 131420, Kevin Haase v. Kankakee School District 111. Counsel, please come up. Are you prepared to proceed? Once again, the lights on the podium are not working. And I apologize for that. The timer works, but the light illuminating your notes does not. You've tried to fix it in the last week and it's not working. I'm sorry. I hope the lighting here is sufficient for you and for everyone else. Not a problem. Thank you. Is the microphone okay that you're here? Otherwise, okay. Thank you. May it please the court. My name is Erin Walsh and I am here on behalf of Defendant Kankakee School District 111 and Darren Dayhoff. The case before you this morning involves an issue of vital importance to all 866 school districts and 360 park districts throughout the state. The appellate court's decision as it stands blurs the distinction between ordinary negligence and willful and wanton conduct by conflicting with this court's precedent, as well as nearly 30 appellate court cases concerning what constitutes willful and wanton supervision in the context of school activities. It further disregards the immunities and protections afforded to school districts and their staff under the Illinois Tort Immunity Act when supervising student activities and making discretionary policy decisions about student misconduct. Now, willful and wanton conduct is an extremely high standard. Under section 1-210 of the Tort Immunity Act, it requires a plaintiff to show not only negligence, but also a course of action showing an intention to harm or an utter indifference or conscious disregard for the plaintiff's welfare. To satisfy this course of action element, the plaintiff must allege that actual facts demonstrating that the defendant acted or failed to act with knowledge of a high probability of serious harm to the plaintiff. Now, the purpose of the Tort Immunity Act is to prevent public entities from being flooded with tort litigation claims and diverting those public funds to defend those claims. Counsel, so I'm looking at that second portion, an utter indifference to or conscious disregard for plaintiff's safety. In this instance, with the facts, what did the teacher know? I mean, I know that there's information that this student had problems before, was aggressive or whatever toward other students. So what did the teacher know at the time that he was supervising the class? Nothing. There is nothing in the record to show that the teacher had any awareness of student A's prior discipline history. He had never issued him a referral for discipline, had never seen him act aggressively towards another student, and Riley and student A never had any conflict. So going into the class, he never had any knowledge of any possibility that diverting his attention would result in a high probability of foreseeable harm to Riley. Now, what about the information about his conduct during the class? Do we know whether or not the teacher observed that or should have observed that? So what we have is testimony of two students indicating that they glanced up once or twice in Dayoff's direction and they said his computer was open. Beyond those two moments of time, there is nothing in the record to show that Dayoff wasn't otherwise supervising either the soccer game or the basketball game, which the majority of students were playing. Dayoff indicated he did not see student A act aggressively during the soccer game. What he did see was student A acting within the normal limits of the game. And shortly before the incident, he saw three or four boys battling for a ball, including student A and Riley, and he found that to be within the normal scrum of the game. So our argument is that even during the game, he was not aware that student A was allegedly acting aggressively because there were no prior injuries. There were no complaints made to Dayoff about student A's conduct to put him on notice that harm may result from him engaging in that activity. Isn't it a fact that the assistant principal communicated with the other members of the faculty and told them that there were referrals for this student violating the student code? There is nothing in the record to show that that was sent out to teachers. There are two items in the record. There is an email from seven months prior, which we included in full in our brief about student A's goals for the year. And there is his disciplinary record, both of which could be accessed through the Skyward system. But Dayoff indicated he never accessed that. The principal indicated there was no policy or requirement to access that. And honestly, to impose a burden on teachers to proactively access and review every single student, which in this case for Dayoff have been over 100 students, proactively access that for every student would be a tremendous burden on school districts. Particularly when student A had never acted up in gym class before to even put him on notice that there could be some issue or some concern. Counsel, just to put a little bit of a difference on the question that Justice Older White asked. If the evidence showed that Dayoff knew of specific violence, incidents of violence on the part of student A, would that make a difference in your analysis and what you're saying? That would not make it a material issue of fact in this case, because the courts have found that precedents consistently held that a student's prior behavior or general aggression does not make it foreseeable that an injury will occur to the plaintiff. Or that he cannot be a left unsupervised. The Albers case and the Floyd case are two prime examples of that. And there the teacher actually had notice of those students acting aggressively. But the court still found that wasn't enough. What is a material fact is that student A and Riley never had any prior issues, and there was no threatened conflict to student A. This is simply an injury that happened in gym class. Was there any obligation on the part of the district to make sure that the teacher did know about the young person's prior behavior? No, there was no policy requiring the dissemination of that information. And even if that was, that's not evidence of local law and conduct. And further, one of the issues with the appellate court's holding is that the district, it's indicating that the district in hindsight did not take every foreseeable precaution, such as disseminating additional information. First, even from a duty perspective, there is no duty. The argument against the district is a failure to protect. There is no duty, special duty to protect the student absent a unique awareness to a particular danger to that student. That is not the case here. And that is upheld in the Burbee versus Village of Glendale Heights by this court. But duty aside, it contradicts Illinois Supreme Court precedent and Barber's Cunningham and Lynch for Supportive Education indicating that school employees who exercise some precaution to protect students from injury, even if that precaution is insufficient, are not guilty of willful and wanton conduct as a matter of law. And as this court recognized in those cases, as well as Cohen versus Chicago Park District, merely because a defendant could have done more to ensure safety, it doesn't follow that they acted willful and wanton. And allowing such an argument would really render willful and wanton conduct synonymous with ordinary negligence. So because the administrators investigated each of student aid's referrals and either implemented discipline or other non-exclusionary- Can willful and wanton conduct be premised on what the teacher and the school should have known versus what they did know? No, should have known is consistently held not to be reaching the standard for willful and wanton conduct because it comes down to that course of action. There needs to be a course of action with either acting or failing to act with knowledge of a high probability of foreseeable harm. And that course of action is not present when you're looking at it through Dayhoff's eyes. Because again, he was not aware of student A's disciplinary history. There is no evidence to support that he was. And there was nothing to put him on notice during the game that some injury would occur. But even still, student A and Riley never had any conflict. That is really the material fact here. Simply because he had a prior disciplinary record doesn't mean that he is going to be an impending danger to any and all students across the school district, to which the district would then have an affirmative obligation to guardians. Is it a material fact or issue that there's some testimony that after the injury the teacher was nonchalant? And does that play into our analysis of whether or not there was real conflict? I don't think it plays into the analysis at all, because it has no bearing on whether or not the injury would occur. So going back to the district, the record shows that they investigated all the referrals. They implemented precautions. They took additional measures. So as a matter of law, they cannot be held liable for willful and wanton conduct. Allowing the appellate court to stand would create the impossible task of a public entity to create every single precaution to prevent an injury. And in reality is, you can always say in hindsight that you could have done this or you should have done this. And that is especially the case in student misconduct. This would dramatically increase liability because a public entity would never be able to be successful at summary judgment, as every decision would be second guessed by a jury of fact that would then need to be decided by a jury. Now, relatedly, the appellate court's holding also contradicts the broad consensus amongst the appellate courts discerning how to deal with student misconduct. In section 2-201, all of these appellate courts, we've cited to nine or ten of them, have found that regardless of whether there could have been willful or wanton conduct, those decisions related to student misconduct and what to do, what appropriate remedial measures to take, are fully immunized under 2-201. Every day, school employees make discretionary policy decisions as to how to manage student behavior. And public policy recognizes that school administrators are in the best possible position to make those decisions and must be afforded discretion to use their professional judgment. Again, allowing the appellate court to stand would open the floodgates to question every single disciplinary decision retroactively, which would undermine the very purpose of 2-201, as recognized by this court in Ms. Harrison-Bretardian's case, which is to allow school employees to exercise their judgment without fear of making a good faith mistake while subjecting them to liability. It is not the role of this court to second guess the legislator's intent in providing absolute immunity for these types of decisions. And as the court has repeatedly recognized that in the Ardman case, in the Henrich versus Libertyville case, in the Kozak versus Retirement Board firefighter case, the responsibility of justice rests with the legislator. Now, going back to Dayhoff's conduct, the glare on air which Justice Hedl highlighted in his dissent is that the court contradicted nearly 30 appellate court decisions, finding that a teacher's failure to supervise student activities resulting in an injury does not constitute willful wrong conduct. You must show facts demonstrating that the teacher made a conscious choice not to supervise, knowing that his lack of supervision would result in a high probability of foreseeable harm to the plaintiff. Both the trial court and Justice Hedl found that the evidence failed to satisfy that standard because there were no prior injuries during that day or the seven months that the student A had been in his class. During the game, no one reported any misconduct by student A. And there had been no prior conflict between O'Reilly and student A. The unfortunate truth is that injuries happen in gym class. There's an inherent risk in every physical activity, even more so in a contact sport such as soccer. But the courts have consistently held that the mere fact that students are participating in a recreational activity doesn't make the injury foreseeable or probable, or the lack of supervision willful and wrong. And I must stress- The district's position that this was simply just an accident? Yes, yes, it is an accident, but also Dayhoff was completely unaware. He did not observe student A misbehaving in any way, to which he would then need to intervene. And even, I implore the court to look at the Geimer case, the Mantra case, the Thornburg versus Crystal Lake in terms of a duty. In answer to Justice Holger White's question, was it, is it your position that it was an accident? Or is it your position that it wasn't an accident, but Dayhoff didn't see it and didn't have to see it? Which one is it? So student, Ryder testified that he wasn't intentionally targeted. No, what is your, what is the district's position? Was this an accident or something else? Our position is that Dayhoff's, regardless of how much Dayhoff was or wasn't supervising, that is not a material fact. I'm just asking, what is your position? Was this an accident, or wasn't it an accident? Or was it something that happened because the student wasn't being supervised, but you're immune from that, regardless of whether that, what's your position? It's a pretty simple question. I think what happened between Riley and student A is an accident. Okay. I think Dayhoff didn't see student A acting in any way which he felt like he needed to intervene. And he has also afforded discretion under 2-201 as to whether to intervene in that type of conduct. That has been upheld in the Geimer case. That has been upheld by this court in the Karras-Rees-Drabel case. So the conduct that he did see, he found to be within the normal limits of the game. But everything beyond that, how student A was acting during the game is irrelevant because it should be immunized under 3-101. Because merely leaving children unsupervised is not willful and wanton conduct. What is your relate for us to facts? What do we know from the testimony as to what happened during the basketball game? During the soccer game? The soccer, yeah, I'm sorry. So we know they warmed up for the first 10 minutes, then they divided, they kicked teams. That was 4 minutes. Then during that 9-minute time frame between, you know, when the injury occurred, we have testimony that student A was running in and out, that he was playing aggressive defense, that he was kicking the ball unnecessarily hard. We have testimony that he ran towards Riley and shoulder checked him. And that is what the injury is. And during that time, again, what Dayhoff was or was not, whether or not he was supervising, we are immunized under the law because that, his inattentiveness, his inadvertence is negligence. It is not willful and wanton conduct. Because he was not aware that student A was acting aggressively or in a manner that would make it foreseeable that Riley would be harmed. A good example of this is the Jackson case. Because there, a teacher left the classroom for 30 minutes, mentally disabled students. She left for 30 minutes. And the court found that the teacher leaving those children unsupervised and the allegation that the teacher should have known harm would occur without adult supervision was not sufficient to constitute willful and wanton conduct. That holding is dispositive to this issue because Dayhoff here remained present in the gym and available if people had concerns. There had been no prior injuries during the game. There were no complaints. Dayhoff alleged inattentiveness. Counsel, when you say Dayhoff was present in the gym if people had concerns, what does that mean? He remained in the gym. In the Jackson case, the teacher left the classroom entirely. I'm not talking about the Jackson case. I'm talking about this case. When you say Dayhoff was present in the gym if people had concerns, what does that statement mean? That statement means he remained in the gym. He's indicated that he stayed in the southeast corner of the gym because there he didn't have to turn his head to abuse the basketball game. So if he's in the gym and he's just present and in total disengagement from what's going on around him, your assertion is that that's sufficient, that that's okay? That is not willful and wanton conduct. That may be negligence, but that is not willful and wanton conduct. I'm just trying to find out what the district's position is. That is not willful and wanton conduct because there's no course of action. Counsel, I'm just trying to find out what is the district's position. Is it your position that if he's there and he's not paying any attention at all about what's going on around him and an accident, or as you say, an accident occurs, that's sufficient? Is that your position? That's sufficient in terms of that's okay. I'm asking you the question. Pardon? I'm saying that he still wouldn't be held liable for being willful and wanton. So it's okay for him to be there and be completely unaware or not observing what's going on, but as long as he's physically present, it's the district's position that that is sufficient? I need to push back that again we have the testimony that's been developed twice. Please answer my question as related to the hypothetical that I gave you. That is sufficient because he doesn't have the course of action. He doesn't have the knowledge that there is going to be a high probability of foreseeable harm to Ryan. I'm clear what you're saying. When you say not sufficient, not sufficient for a cause of negligence or not sufficient for a theory of willful and wanton? It's not sufficient for willful and wanton because there has to be that course of action element which requires knowledge of, even in the Barr case, you described it as knowledge of impending danger. He needs to have that knowledge and then consciously choose either to walk away or to not take any action. The Hadley v. DeWitt is a good example of that case because there the student was engaging in an inherently dangerous activity. The teacher watched that student for 20 minutes. She was pounding metal into an anvil, watched that student for 20 minutes and then decided to walk away without telling the student to stop, without telling the student to put on goggles, take any safety precautions. The court found that was sufficient because there was that course of action. The course of action was leaving at that point knowing that the student was engaging in an inherently dangerous activity. What was Mr. Dayhoff doing when he was sitting in the gym? Wasn't he on his computer and doing things that would prevent him from acquiring knowledge about what was going on in the gym? Dayhoff indicated that if his computer was open he was either inputting attendance or responding to an email. And he should be afforded discretion under 2-201 to make that determination. Technology is integral to the school setting and the management at this point. So he needs to have discretion to divert his attention. But it's not willful and wanton because he didn't have any knowledge of foreseeable, probable, specific harm to Riley when he diverted his attention. But if he's doing things that will prevent him from acquiring knowledge, how does the court look at that? That's not sufficient. Again, even under the common law standard there needs to be the course of action. All of the 30 appellate court opinions that we cited to indicated that. Then in 1998 the appellate court, the Tort Immunity Act is it okay if I finish these answers? The Tort Immunity Act was amended to remove absolute immunity for 3-108 and to include an exception for willful and wanton conduct. And with that amendment the legislative history indicates that regarding willful and wanton conduct this is a sponsor, mind you. This change indicates that we are not immunizing activity that goes so far beyond the pale. So egregious. I can only think of an example where somebody is supposed to be supervising someone with special needs and basically throws them into a pool and walks away. That is from House Transcript from House Bill 1151 on May 20, 1998 from the sponsor, pages 8-9. Then he indicated this standard that we are dealing with willful and wanton is in effect intentional misconduct. That is House Transcript from November 17, 1998. Again, and then this court indicated in the most recent Supreme Court opinion that dealt with toward immunity in the bar case said you need foreknowledge of impending danger. So what the amendment really did was codify that course of action element with the intent that there has to be that knowledge. There has to be that knowledge of specific, probable, foreseeable harm to reach that willful and wanton standard. Counsel, would you bring your remarks to a close? Thank you. I will close by indicating that the appellate court's decision waters down willful and wanton conduct to equate it with simple negligence which will entirely circumvent 3-108 of the Toward Immunity Act and fundamentally change the liability landscape for all school districts and all park districts supervising over children in the state. It will create a duty to prevent unforeseeable misconduct by another student which will reach strict scrutiny. It will subject a teacher to increased liability whenever he or she is tasked with juggling more than one responsibility at a time. It will require all 3,800 schools within the state to provide heightened supervision to every student who has a disciplinary record. And this will result in public entities being unwilling to teach physical activities during gym class or other recreational activities. So I will conclude by asking the court to reverse the appellate court's decision and affirm the trial court's decision granting summary judgment for both Danoff and the district in this matter. Thank you for your time. Madam Chief Justice, members of the court, counsel, my name is Pat Anderson and I am here to represent the plaintiffs. We are asking this court to affirm the appellate court's decision which reversed the trial court's grant of summary judgment which was based on 2-201 of the Tory Immunity Act. As counsel's argument indicated, there are two issues. Whether discretionary immunity applies under section 2-201 of the Act and if it does not, whether defendant's conduct can be fairly characterized as a willful and wanton failure to supervise such that there is a tribal issue of fact. When analyzing both of the issues, though, it is important to emphasize that we're here on appeal of a motion for summary judgment which means that the pleadings and the evidence must be construed strictly against the defendant and in plaintiff's favor. All reasonable inferences must be drawn in plaintiff's favor. And that's important to keep in mind when defendant is making arguments like student A was acting as you would expect someone to when they're playing soccer. That's not the testimony. There's conflicting testimony as to that. That he was treating it more like a soccer game. That he was getting more and more aggressive. That he was running over and pushing and shoving students. It's important to remember that standard when the defendant argues that Riley was injured in a normal scrum for the game. When defendant argues that Mr. Dayhoff only looked down at his phone once or twice during the class period because the testimony is that it is his custom and practice to be sitting in the corner with his feet up on a little desk, staring at his computer and his phone any time that wasn't the first ten minutes and the last ten minutes of class and there's testimony that he followed that custom and practice on this day. Could you tell me again the same question that I asked your opponent what specifically was the evidence about what was happening in the game? With respect to Riley or with respect to Mr. Dayhoff? To the game. I'm sorry. What was happening in the game your argument is that the teacher was not watching the game. He wasn't involved. He wasn't supervising. Had he been watching every minute of the game what would he have seen? He would have seen a student student A who was not dressed for gym and who had not been selected for either of the soccer team. He would have seen him continually running in from his position along the wall where kids who didn't dress would be positioned. He would run into the game. He would run into students. There's testimony that he would push and shove students. That he was becoming increasingly rough. That he was trying to take the ball away. Was he playing at the time? That's a disputed question of fact. Riley and Jacob say he's not on either team. He's not playing. He's just running in and disrupting the game. Not necessarily playing. So I think that is a disputed fact question. The testimony from Jacob is that what student A did to Riley was not a normal part of soccer. It was not incidental to soccer. So saying that this was something that you would expect out of someone playing soccer would interpret the facts in defendants favor, which can't be done at this procedural posture. So if Mr. Dayhoff had been paying attention, he would have seen student A continuing to run into this game, to disrupt other students to push and shove his classmate. What evidence is there when you say continually? Can you tell us more? Has this happened one time? No. Riley and Jacob testified that this happened more than one time, that on multiple occasions before Riley was injured, on multiple occasions student A was running into the game, was disrupting the game. There's testimony that he would even run over to the other side of the gym where kids were playing basketball and disrupt that game as well. So this isn't a one-time thing. Was there testimony from the plaintiffs that there was physical contact? Yes. Before the injury? Yes. There is testimony from Jacob Galbraith, Riley's classmate, as well as Jacob himself, that there's physical contact pushing and shoving, that he had shoved other students and pushed other students before this incident with Riley. So Dayhoff would have been able to see that had he simply looked up from the phones and screens in the corner of the gym. So your theory is that there's a question on material fact as to whether or not the conduct here was willful and wanton, not negligence. Are you relying on the fact of his lack of observation of the game or is there something else about his testimony that the teacher had no knowledge of any prior misconduct? Which are you relying on? Well both, I think, in different ways. The fact that this kid was running in and out of the game pushing and shoving students, that alone should have given Mr. Dayhoff sufficient knowledge of an impending danger such that he should have been required to act and such that a willful and wanton claim is a tribal issue of fact. The fact that he did not know of student A's disciplinary history which he said if he had known those things, it would have heightened his level of vigilance over student A. So if he had known about those things that would have led him, by his own admission, to increase his awareness. And so there's a question of fact as to whether he should or whether he knew or should have known of those disciplinary incidents because they were available to him through the Skyhook system. I'm trying to figure out what the issue is. In terms of knowledge or lack of knowledge his testimony was that he did not know of any prior disciplinary action. Correct. Okay. Correct. So your theory is that this is willful and wanton conduct because he should have known. Is that correct? Correct. Correct. He should have known. And I think counsel said during her argument at one point that should have known is not enough under the case law and I think that that is completely contradictory of what the case law is. I'm sorry. I'm trying to find my notes on that topic. There's a fine line between negligent conduct and willful and wanton. Correct? Correct. But where this falls is not an issue for the court to decide on summary judgment. Whether conduct rises to that willful and wanton level, that's a jury question. Counsel admitted there's enough evidence here to say this is negligence, but it's just not willful and wanton conduct. Respectfully, that's not counsel's call at this stage. That should be the jury's call to decide whether this conduct was just negligent and they're immune or whether it rose to the level of utter indifference. Whether it rose to the level of willful and wanton conduct. As a matter of law, then does should have known rise to the level of willful and wanton? Absolutely. Constructive knowledge is sufficient. Whether a defendant knew or should have known of an impending danger is a question of fact that precludes summary judgment. Counsel, is there any dispute as to what the teacher actually observed during the class? Do you agree with opposing counsel that the teacher did not see the behavior of the problematic student? I do, and that's the issue. He did not see this ongoing behavior that Riley and Jacob both testified was going on. And that is evidence of his utter indifference. That is evidence that he was looking at the screens. That he was looking at screen time instead of paying attention to his class. But even if that's true, why is, you know, why shouldn't we find that that's the determination of his policy? He does this all the time. This wasn't a one-off. This teacher sits in the corner, you know, for 30 minutes at every class. And that's his policy. So even if everything you say is true, how do we, how do you overcome it being, you know, part of his determination of policy, or exercising his discretion, even if it's an abuse of discretion? That may be his policy. That may be his personal policy of the way to teach. But discretionary immunity requires defendants meet their burden to show both a discretionary decision and a policy decision. And that policy decision, that discretionary decision, has to be with respect to the conduct alleged to have caused the injury. In this case, Dayhoff's admission that he did not see the conduct that plaintiff alleges he was supposed to stop precludes any conclusion that he made a decision. If he didn't see student A acting in the way that should have been stopped, his failure to stop it can't be a result of a choice. It's just a decision by default, and that's not discretion. That's not what discretionary immunity protects. Even if his policy was, I just sit in the corner with my feet up every day. That's not a discretionary decision. He exercised no discretion. There's no testimony as to his thought process, what balance he weighed, what factors he weighed, what balance he struck. There's no testimony that he said, I saw this kid running around and I thought it was okay. I decided that this was okay. That's my determination. That testimony is not there, and on summary judgment it's the defendant's burden to provide that testimony. It is a question of fact. So is the issue here discretionary immunity or supervisory?  so the defendant has, and the trial court granted summary judgment based on this discretionary immunity claim, which provides absolute immunity. And if there's no decision, there's no discretion. So that discretionary immunity can't apply. The other reason discretionary immunity can't apply is because it is a general immunity provision and there's a more specific immunity provision, pertains directly to supervision, which is the governmental function and issue in this case. This is not a bullying case. A lot of the bullying cases the defendant has cited involve the application of an anti-bullying policy, and in Haskell specifically the court found that bullying is not specifically covered by any other portion of the act. By contrast here, supervision there is a specific provision which relates to supervision section 3-108, and so for that additional reason section 2-201 discretionary immunity doesn't apply. So there's two reasons discretionary immunity doesn't apply. And so the reason that we get into the willful and wanton issue is because unlike discretionary immunity, section 3-108 supervisory immunity does not have does not provide absolute immunity. Willful and wanton conduct is not immunity, and willful and wanton conduct is a question of fact for the jury and depends on the circumstances in each case. Can you respond to the case, and I'm sorry I don't recall the name, but the facts where the teacher left the special needs students alone left the room, and yet that was found not to be willful and wanton? Absolutely. In that case, first of all the teacher left the students with an aide, so there was an aide that was covering two classrooms. Secondly, the only danger alleged by the plaintiff in that case was that the EMH students were left together. Plaintiff alleged, hey, these EMH students by their general nature, they have lower impulse control, there's bound to be something happening. We're not just saying in this case, and that's the same as some of these other cases, the Field Museum case, it isn't just the general danger of kids being together or kids of different ages or kids playing soccer that we are alleging is the danger Dayhoff failed to stop. It's a specific danger. It's an ongoing aggressive student who is pushing and shoving his teammates throughout class. And the other fact that counsel kind of threw in there is that he was only not supervising for nine minutes. That's again taking the evidence in the light most favorable to the defendant instead of the plaintiff. Riley testified he was injured toward the end of class. Jacob testified it happened 20 to 30 minutes after they had started playing soccer. So all of these are disputed fact issues. With respect to counsel's argument that should have known is not enough, in our brief we laid out that for over 100 years, the definition of willful and wanton conduct in Illinois has included the failure to discover an identifiable danger through recklessness or carelessness when it could have been discovered through ordinary care. This court has reaffirmed that principle more than a dozen times over the last 100 plus years, starting in Lakeshore v. Bodmer, going through Brown, Schneiderman in Myers. The defendant asked this court to find the Schneiderman definition was erroneous because it confused willful and wanton conduct and negligence. And this court affirmed that definition and found that an act done with indifference for the consequence when the knowledge of other persons is involved can constitute willful and wanton conduct. And that knowledge concerning the other persons can be actual or constructive. This court has continued to reaffirm and apply the same definition decade after decade. In Ziarko, the court addressed the qualitative difference concepts from Loitz and Burke and made clear that willful and wanton misconduct may be only degrees more than ordinary negligence. And the court reaffirmed the definition of non-intentional willful and wanton conduct as including a failure to discover a danger through carelessness when it could have been discovered through ordinary care. The court's decision in Doe is illustrative where the school board failed to provide a bus attendant when it should have known of the likelihood of harm that was sufficient to support a claim for willful and wanton conduct. This court's decision in Murray is another example. It shows that actual knowledge of the danger is not required. There were no prior incidents. The defendant instructor did not have actual knowledge of the danger of the back flip. The accusation was that the instructor should have known of the danger given the circumstances. That's the exact same argument here. Many of defendant's own cases recognize the same principle. A triable issue of fact exists in relation to a claim for willful and wanton conduct based on a lack of proper supervision where the evidence shows the defendant knew or should have known of an unreasonable risk of danger arising from the lack of supervision. Counsel, the phrase course of action in the definition of willful and wanton conduct in section 1-210, what does this phrase mean to you? A course of action means that he took a step or series of steps and that's what he did in this case. His course of action in sitting in the corner with his feet up, not paying attention, distracting himself with his phone and his computer is a course of action that shows utter indifference for the safety of others. And so that is what his course of action was. I don't think that's difficult to In your argument, the facts of this case clearly meet that standard. Correct. Correct. Because utter indifference has always been included in the definition of willful and wanton conduct. And the section 2, sorry, 1-210 provides a series of alternative methods of proving willful and wanton conduct. It can be intentional conduct or a course of action that shows conscious disregard or utter indifference to the safety of others or is disjunctive. Those are different ways to show willful and wanton conduct. Willful and wanton conduct can be proven through evidence of intentional conduct. So you're saying that all of this suggests that summary judgment was inappropriate and that all of these facts should have been presented to the jury. Absolutely. This is a jury case and there are disputed issues of the fact whether this conduct constitutes utter indifference is for the jury. The word indifference means a lack of care or concern for others or a lack of care or concern. There's probably few more apt descriptions to describe what Mr. DeHaas' conduct was, particularly if that conduct is taken if the evidence is construed in the light most favorable to the plaintiff. In the light most favorable to the plaintiff, we have a teacher that completely checked out. He sat in the corner with his feet up occupying himself with springtime while a kid continued to push and shove classmates until one of them was eventually injured. That is a triable issue of fact as to willful and wanton conduct. Defendants were raised I think now it's 30 cases that the appellate court's decision contradicts. Defendants were raised heavily on Justice Kettle's dissent for that argument. First of all, there are not 30 cases that are similar to this case. Each case turns on its own facts. As this court said in Myers, the facts to which the law is applicable always represent divergent circumstances and facts which, in most instances, are wholly dissimilar. Plus, the cases are not similar. We talked about the general danger cases. There's a number of them, like Monshan and Pomerant and Jackson. That's not this case. The other category of cases, our defendants took some action. That's not this case either. Mr. Dayhoff didn't do anything to address the ongoing problem in his midst that he would have seen. So this case isn't like Barr, where they used plastic hockey sticks and squishy balls and had instruction. Dayhoff did nothing. This isn't like Geimer or Lynch or those cases. The final category of cases of the litany of 30 are pleading sufficiency cases. That's not this case either. These cases were decided on motions to dismiss where there were no allegations that the teacher knew certain facts, that there were conclusory allegations, that there were no facts alleged that showed defendant breach to do. That's not this case either. We're beyond the stage of looking at pleadings and deciding whether or not they're conclusory or can be proven. On summary judgment, we're looking at the actual evidence in the testimony to determine whether a tribal issue of fact exists. So no, the appellate court's decision in this case does not conflict with 30 decisions or however that was phrased. As the First District discussed in Davis, willful and wanton cases also can fall into one of three categories. At one extreme are cases that are so benign as you can find as a matter of law that this is not willful and wanton. At the other extreme are cases where the conduct's so egregious you can say as a matter of law this is willful and wanton. But the third scenario are cases where the question of willful and wanton conduct is the subject of reasonable argument. Where reasonable minds might draw different inferences from the same undisputed facts, it's the role of the jury to decide whether the conduct at issue crossed the line and became willful and wanton. Here, the circumstances are certainly not so benign, particularly when the evidence is interpreted in the light most favorable to the plaintiff so that the issue of willful and wanton conduct can be determined in defendant's favor as a matter of law at the summary judgment stage. In an era where threats to students' safety in schools are at an all-time high, parents of this state should be able to expect the slightest modicum of vigilance for the safety of the students entrusted to the care of our teachers and our public schools because the evidence presents disputed questions of fact as to whether Dayhoff made a decision at all, let alone a discretionary one, and whether his conduct was willful and wanton, the court should affirm. Thank you. Thank you very much, Counsel. Counsel, you may reply. Counsel, let me ask you right out. Sure. Your opponent just said where reasonable minds can draw different inferences from the same facts, it is a question for the jury. How do you respond to that? I will respond that the precedent has clearly stated that failure to supervise or the allegation No, just respond to that statement and not No, that's a principle of law. How do you respond to that with respect to this case? I would respond by indicating that in the Barr case, this court held that if there are insufficient facts to warrant willful and wanton conduct, the matter should not go to a jury. That's not what he said. He said that there are sufficient facts and reasonable people could come to different conclusions looking at those facts, so it should be submitted to a jury. I am saying, do you disagree with that? How do you respond to that? I'm sorry, I don't mean to interrupt you. The facts that he is trying to make a dispute about are not material facts to this case because the case law says that the mere fact of leaving children unsupervised or the allegation that a teacher should have known harm would occur without that supervision is not sufficient as a matter of law to constitute willful and wanton conduct. I think that's exactly what he said. He talked about the facts almost like active indifference on the part of Dayhoff as opposed to just unsupervised. All of that to say that with these facts, you're characterizing it one way and he's characterizing it a different way. He argues that the facts should be construed in a way that's most favorable to the plaintiff and if so, why shouldn't the jury get to decide whether or not they're... Because plaintiff cannot establish that Dayhoff made a conscious choice not to supervise knowing that his lack of supervision would result in a high probability of serious harm to Riley. He does not have that mental awareness that his lack of supervision would result in a high probability of foreseeable harm to the plaintiff. That is the course of action element that is missing in this case and plaintiff admitted he didn't know. He didn't see what was going on. There was also then nothing to put him on notice to which he then made a conscious choice to not stop the behavior. His unawareness is in effect negligence. It is inattentiveness. It is an avertment. It is incompetence either. But this court inferred that's not Wolf and One. What's so different about this case that's I don't know if it was welding or anvil class where the teacher just walked away. I mean soccer could be very dangerous even played appropriately. Soccer, so what the case, the Harvey vs. Wood case pounding a scrap metal in an anvil that the court, this court found in Barr, that was an inherently dangerous activity. The Murray case, this court found in Barr, that was an inherently dangerous activity. Soccer is not an inherently dangerous activity as defined by section 3-109 of the Tort Immunity Act. It is not considered a recreational hazardous activity. If it was, no school would allow soccer. So that is the difference. Willful unwanted conduct typically comes in two categories. One of two categories, neither of which are present here. Either a student is observed engaging in inherently dangerous activity and the teacher does nothing in response. Takes no safety precautions. That is the Hadley case, that is the Murray case, that is the Landers case. Every case plaintiff cited two. Then there is the other category where there is conflict between two students and when the district is aware of a specific threat to a student and then takes no safety precautions that could be willful unwanted. Because again, there is that awareness of a specific threat to a specific student. And that is exhibited in the Gammon case. There, there were specific threats to a specific student and the district took no action. That's not what happened here. And related to the district and their potential liability, they took action. They investigated each referral for discipline. They implemented non-exclusionary interventions to help them succeed. They took action and therefore as a matter of law, they can't be held willful unwanted and also their conduct should be entitled to absolute immunity. Because it is the district that should be deciding what remedial measures to impose on a student. And I have to just put out there that plaintiff's characterization of student aid being aggressive, that does not reach the requirements necessary under Section 504 of IDEA to warrant a behavioral intervention plan, a Section 504 plan, or anything like that. There are very specific requirements in terms of evaluation and, you know, steps that have to be taken. They just said based on hearsay, what they heard through the grapevine, he was aggressive. He had gotten in some fights. That's hearsay. That's not what's happening here. That should be entitled, the district should be entitled to full immunity for that, and to hold otherwise would really open the floodgates to liability for all 3,800 school districts. The appellate courts are consistent on this subject, and this is an opportunity for the court to really affirm that. Related to Dayhoff, he's indicated he specifically allowed student aid to be led, even though he had addressed. That's in the testimony. Neither Ryder or Jacob knew whether or not, because he wasn't addressed, but we have the affirmative teacher indicating that he did. He indicated, I did not see student aid engaging in any sort of aggressive or unwanted physical contact with other students throughout the soccer game, and recall he was playing soccer just like the rest of them. That is CS74. So, based on that, from what he saw, there was nothing to go in on. And I have to say, just going back to the should-have-known standard, that has been held in the Law Senate, in the Milwaukee, the Jackson case, the Winfrey case, the Washington case. Plaintiff's reliance on Zuccaro isn't the appropriate standard, because the 1998 amendment codified the course of action for willful nonconduct, and they said this is basically intentional conduct. He relies on Murray for the should-have-known. Murray relied on Zuccaro before the 1998 amendment took place. So, this court in Barr, being after the amendment, said foreknowledge of specific or probable harm or impending danger, and relied on Burke. And Burke had a qualitative difference between negligence and willful nonconduct. It carries a degree of opprobrium. So, I, there is no conscious disregard, because he was not aware of any activity that would warrant foreseeable harm to Riley. Regardless of what student A was doing during the game, all of that is immaterial, because he was not aware.  was there to put him on notice. No prior injuries, no issues at all with student A in the seven months he had been in his class. There was nothing there to put him on notice, to which he felt like he couldn't divert his attention. The course of action to divert his attention has to be made with knowledge of a high probability of foreseeable harm to the plaintiff. That is absent from this case, and that is why plaintiffs cannot state a claim for willful nonconduct as a matter of law. And that, it shouldn't go to a jury. Also, precedents consistently have that a student's prior behavior or aggression, again, doesn't make it foreseeable that the injury would occur, or he couldn't be left unsupervised. And to hold otherwise would really require a school district and a park district to provide one-on-one supervision to every student that has had a discipline in his past. That is an untenable standard. I'll conclude by indicating that the Jackson case is most of note for this because, again, there a teacher left a mentally disabled student for 30 minutes and the court found that the fact that she should have known harm would occur in that situation was not willful in line because there was no knowledge at the time she made the decision to leave the classroom that there was going to be specific and pending harm to the plaintiff. I cannot stress that enough. That is why this case should not go to a jury because as a matter of law, it is insufficient. And for that reason, we request that this court uphold the trial court's opinion for both defendants and reverse the appellate court's decision because it will create a tremendous burden on all public entities and really circumvent section 3-101. You made your point. I did. Thank you for your time. In this case, agenda number 10, number 131, 420, Kevin Haas v. Kankakee School District, 111 will be taken under advisement. Thank you both for your arguments.